UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PERSONNEL STAFFING GROUP, LLC,

                      Plaintiff,

          -v-

XL INSURANCE AMERICA, INC. *et al.*,

                      Defendants.

22-CV-10259 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Plaintiff Personnel Staffing Group ("PSG") comes before this Court, by order to show cause, seeking a temporary restraining order and preliminary injunction enjoining a final arbitration hearing scheduled to begin later this month. For the reasons that follow, PSG's motion is denied.

**I.    Background**

General familiarity with this case, which has a lengthy background across several fora, is assumed.[1] In short, the present dispute concerns the validity of an arbitration and delegation clause in an agreement between PSG, a staffing agency, and XL Insurance America ("XL"), PSG's insurance carrier. PSG contracted with XL to provide annual worker's compensation policies, and in connection with those contracts, entered into an agreement governing PSG's obligations under those policies (the "Insurance Program Agreement" or "IPA"), and an agreement with a third party to administer those claims (the "TPA agreement"). (Dkt. No. 73-2 at 5.) The IPA includes an arbitration clause providing that "any dispute" between PSG and XL "with reference to the interpretation, application, formation, enforcement or validity of this

---

[1] For more detail, see the parties' briefs at Dkt. Nos. 73-2, 82, and 84.

Agreement or any other agreement between them, or their rights with respect to any transaction involved, whether such dispute arises before or after termination of the Agreement . . . shall be submitted to the decision of a board of arbitration," and a delegation clause providing that "the board of arbitration will have complete and exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability."  (Dkt. No. 82-2 at 2.)  In 2021, a dispute arose over PSG's obligations under the IPA, whereupon XL initiated arbitration.  (Dkt. No. 73-2 at 6; Dkt. No. 87-1.)  PSG filed an appeal with the California Insurance Commissioner, contending that the IPA was void with respect to California worker's compensation claims because XL had failed to file it with the Commissioner for approval, pursuant to California Insurance Code § 11658.  (Dkt. No. 73-2 at 7.)  PSG dismissed the administrative action with prejudice after signing an agreement (the "2021 stipulation") with XL voiding "all the terms" of the IPA as "void and unenforceable as a matter of law as they relate to [PSG]'s California workers' compensation exposure."  (Dkt. No. 74-2 at 309.)  In the 2021 stipulation, XL reserved "all rights to other claims and/or causes of action" in the ongoing arbitration, but agreed that it would "not seek amounts which may be owed under the terms of the Insurance Program Agreement . . . related to [PSG]'s California worker's compensation exposure."  (Dkt. No. 74-2 at 309.)

In June 2022, the arbitrators issued an interim order, including an award.  (Dkt. No. 74-2 at 312.)  PSG filed a petition to vacate the interim arbitration award in California Superior Court in September 2022.  XL removed the case to the United States District Court for the Central District of California the same month.  PSG ultimately filed a motion for a preliminary injunction with that court in November 2022, seeking to enjoin a final arbitration hearing on several topics, including claims relating to California, to be held in late mid-to-late January 2023.

(Dkt. No. 54.) The case was transferred to this court in December 2022. (Dkt. No. 66.) The parties submitted briefing and appeared by telephone for a hearing on January 5, 2023.

## II.     Legal Standard

In the Second Circuit, the standards for a temporary restraining order and preliminary injunction are essentially the same. *See Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). Plaintiffs must show (1) "a likelihood of success on the merits" (2) "that [plaintiffs are] likely to suffer irreparable injury in the absence of an injunction," (3) that "the balance of hardships tips in [plaintiffs] favor," and (4) "that the public interest would not be disserved by the issuance of [the] injunction." *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010) (internal quotation marks omitted). If the balance of hardships "decidedly" tips in the plaintiff's favor, courts may also issue an injunction if there are "sufficiently serious questions going to the merits to make them a fair ground for litigation." *Id.*

## III.    Discussion

### A.    Likelihood of Success on the Merits

PSG contends that the arbitration and delegation clauses of the IPA are void. Therefore, it argues, not only are all California claims outside of the arbitrators' jurisdiction, but so is the question of whether they are arbitrable at all.[2] PSG asks this Court to enjoin the arbitration from proceeding until after this Court has made its determination on the arbitrability of the claims. PSG makes three arguments as to why the question of arbitrability is outside the arbitrators' jurisdiction.

---

[2] The panel of three arbitrators has already considered the question of arbitrability, and a majority issued an order in favor of arbitrability. (*See* "Interim Order No. 3," Docket No. 74-2 a 312.)

PSG's first argument is that the IPA, which contains the arbitration clause, is void as a matter of law as to California exposure for failure to file it as required under California Insurance Code § 11658.  In support, PSG points to a string of cases in California courts that have held similarly unfiled agreements void and unenforceable.  (*See* Dkt. No. 73-2 at 7.)

PSG's first line of argument fails under *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006).  In *Buckeye*, the Supreme Court explained that there are two types of challenges to arbitration agreements: one which "challenges specifically the validity of the agreement to arbitrate," and one which "challenges the contract as a whole," such as, in one of the Court's examples, on the ground that the entire agreement was fraudulently induced. *Id.* at 444.  While a court may adjudicate arbitrability as to the first, in light of the severability of arbitration clauses, "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449; *see also Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 61 (2d Cir. 2012) (quoting and applying *Buckeye*); *Aretakis v. First Fin. Equity Corp.*, 744 F. App'x 741, 742 (2d Cir. 2018) (affirming the district court's order compelling arbitration because the challenge was to the contract as a whole).  PSG's first argument that the contract is void as an unfiled agreement goes to the enforceability of contract as a whole, and only by extension to the arbitration provisions. *Accord Matter of Monarch Consulting, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 26 N.Y.3d 659, 676, 47 N.E.3d 463 (2016) (applying *Buckeye*'s reasoning to a dispute over who ought to decide the validity of an arbitration clause contained in an unfiled California insurance agreement and concluding that the question belonged to the arbitrators.)

PSG's second argument relies on three words of the 2021 stipulation: "all the terms." PSG argues that because XL agreed that "all the terms" of the IPA "are void and unenforceable

4

as a matter of law as they relate to [PSG]'s California workers' compensation exposure," the 2021 stipulation represents an agreement between the parties to void each and every term of the contract *individually*, and thus constitutes an individual severing and *then* voiding of both the arbitration and delegation clauses. PSG therefore argues that it is bringing a specific attack on the validity of the arbitration and delegation clauses, falling into *Buckeye*'s first bucket and correspondingly into this Court's jurisdiction to rule on arbitrability.

The phrase "all the terms" cannot bear the weight that PSG seeks to place on it. The better reading of the 2021 stipulation is that the parties contracted to void the entire IPA, and not to specifically void the arbitration and delegation clauses, which extend by their terms beyond the IPA to the other agreements between the parties. PSG has presented no evidence that the parties understood otherwise. Indeed, PSG argues throughout that the purpose of the 2021 stipulation was to afford PSG "the same" relief that it would have received from the Insurance Commissioner — which would have been a judgment on the validity of the IPA as a whole. (*See, e.g.*, Dkt. No. 73-2 at 2, arguing that "rather than risk a public determination by the California Insurance Commissioner voiding all of its unapproved agreements, XL privately stipulated with PSG for that relief. Thus, notwithstanding California law, *the effect of the parties' private stipulation is the same*") (emphasis added).

Finally, PSG contends that any argument based on interpretation of the 2021 stipulation — such as its second argument regarding the meaning of "all the terms" — is not subject to any arbitration clause, and therefore belongs before this Court. This argument is unpersuasive for the same reason as the previous one. The best reading of the 2021 stipulation is that it voids the IPA whole cloth. In that situation, under *Buckeye*, the question of arbitrability goes to the arbitrators, who must decide in the first instance whether the arbitration clause — which applies not only to

the IPA but to "any other agreement" between PSG and XL, "whether such dispute arises before or after the termination of the [IPA]" — survives and applies to the 2021 stipulation as well.

The crux of all of PSG's arguments is the same: that the IPA is void and unenforceable as a matter of law, and only by extension, so is the arbitration clause. "Courts treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself." *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 301 (2010). PSG's challenges, at bottom, are to the entire IPA. PSG has not demonstrated a likelihood of success on the merits.

### B. Irreparable Injury

PSG cites several cases holding that being forced to spend time and resources to arbitrate a non-arbitrable issue can constitute irreparable injury. *See, e.g.*, *Maryland Cas. Co. v. Realty Advisory Bd. On Lab. Rels.*, 107 F.3d 979, 985 (2d Cir. 1997); *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003). These cases, however, concerned arbitration clauses that facially excluded the claims being brought — a fact that featured prominently in the courts' reasoning on irreparable injury. That is not the case here. PSG has not established a likelihood of success on its claim that the arbitrators have exceeded their authority or that it is being forced to arbitrate non-arbitrable claims. Therefore, PSG has also failed to establish irreparable injury.[3]

---

[3] Moreover, in *Maryland Cas.*, the court also considered that the time and resources that the plaintiff would expend were "not compensable by any monetary award of attorneys' fees or damages pursuant to the provisions of the Agreement or the Arbitration Act," overriding the usual rule that "an injury that is adequately compensated by a monetary award is not considered irreparable." 107 F. 2d at 985. Here, however, PSG has asserted only monetary harm, and has not demonstrated that monetary damages would not be available or would not adequately recompense it for any potential injury. *See also Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir.

### C. Balance of Hardships

Nor has PSG demonstrated that the hardships balance in its favor. While PSG contends that an injunction would result in only a "short" delay (Dkt. No. 73-2 at 22), XL presents facts showing that a halt to the arbitration would necessarily require it to be rescheduled at least a year hence. (*See* Dkt. No. 82 at 6.) This would affect not only the claims that PSG contends are non-arbitrable, but also the remainder of the claims whose arbitrability is not in dispute.

### D. Public Interest

PSG has failed to demonstrate that it meets any of the other factors necessary for enjoining the scheduled arbitration proceeding. Accordingly, the Court declines to evaluate the public interest considerations at play, as the inquiry could have no effect on the outcome.

## IV. Conclusion

Plaintiff's motion for a preliminary injunction and temporary restraining order is DENIED and the order to show cause is discharged.

The Clerk of Court is directed to close the motion at Docket Number 73.

The Clerk of Court is directed to close the motion at Docket Number 78, which is denied as moot.

SO ORDERED.

Dated: January 10, 2023
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

2010) (explaining the ordinary rule that monetary damages alone do not constitute irreparable harm).