UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

PERSONNEL STAFFING GROUP, LLC,

               Petitioner,

      -v-

XL INSURANCE AMERICA, INC. *et al.*,

               Respondents.

22-CV-10259 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

    Before the Court are two related motions filed by Respondent.  The first, at ECF No. 91, seeks to seal entirely or to apply redactions to eleven documents in this case — ECF Nos. 1, 28, 44, 54, 55, 65, 73, 74, 84, 89, and 90 — which include an Opinion and Order of this Court.  (*See* ECF No. 89.)  The second, at ECF No. 99, seeks to seal entirely or apply redactions to the transcript of an oral argument in this case from January 5, 2023.  For the reasons that follow, both motions are denied.

**I.**    **Background**

    Both of Respondent's requests pertain to a document memorializing the terms of a settlement between the parties which resolved an administrative action before the Insurance Commissioner of the State of California (the "Stipulation.")  The face of the Stipulation states that it is "CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY," and states that "[i]n the event that a proceeding is brought to enforce the terms of the Stipulation, the Stipulation shall be filed under seal, with all references to the Stipulation appropriately redacted, and otherwise treated as confidential within the context of those proceedings."  (*See* ECF No. 74-2 at 309 – 310.)

The present action in this Court concerns the effect, if any, of the Stipulation on the arbitrability of certain claims between the parties. Accordingly, the Stipulation is central to this dispute, which turns on its interpretation. Both parties have submitted the Stipulation as evidence and relied on it in their briefs, and analysis of the Stipulation features heavily in this Court's decisions in this matter thus far. (*See, e.g.*, ECF No. 89.) Despite the confidentiality language of the Stipulation, Petitioner did not seal or redact it or references to it in its submissions, and the Court relied on Petitioner's publicly filed version of the Stipulation (which is identical to Respondents' sealed version) in its Opinion and Order. *Id.* Now, Respondents seek to retroactively seal completely or redact the Stipulation and all references to it in Petitioner's submissions and in this Court's Opinion and Order, as well as all references to it in the oral argument held on this case.

## II. Discussion

In the Second Circuit, sealing requests of this sort are analyzed under the framework articulated in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). First, a court determines whether the documents at issue are "judicial documents" to which a common law presumption of access applies. "Judicial documents" are documents that are "relevant to the performance of the judicial function and useful in the judicial process." *Id.* at 119 (quoting *United States v. Amodeo*, 44 F.2d 141, 145 (2d. Cir. 1995)). Then, the court considers the weight of the presumption of access, which is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (quoting *United States v. Amodeo*, 71 F.2d 1044, 1048 (2d Cir. 1995)). This weight falls on "a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* The final

step in the common law analysis is the balancing of "competing considerations" against access, such as the impairment of law enforcement or the privacy interests of those resisting disclosure. *Id.*

In addition to the common law right of access, courts must also attend to the "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents." *Id.* (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d. Cir. 2004)).  In assessing the First Amendment considerations at play, courts deploy the so-called "experience and logic" test, and additionally or alternatively, consider "the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id.*

### A. Whether the documents at issue are judicial documents

Judicial documents are documents that, in contrast to documents exchanged during discovery, are used at the "adjudication stage." *Lugosch* at 121 (citing *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982).  "An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Id.*  Here, the documents were submitted as part of the briefing of an order to show cause, which sought to halt an impending arbitration.  On a continuum from discovery to summary judgment, an order to show cause seeking a preliminary injunction falls squarely on the summary judgment end of the continuum.  While not a final adjudication on the merits, a preliminary injunction "is an extraordinary and drastic remedy" and an area where district courts have "wide discretion." *Moore v. Consol. Edison Co. of New York,* 409 F.3d 506, 510-11 (2d Cir. 2005). Unquestionably, it is a formal act of government which therefore should generally be subject to public scrutiny.  Moreover, Respondents seek not only to seal or redact portions the documents submitted in determining the order to show cause, but also the hearing for the order to show

3

cause and the Court's own opinion and order on the order to show cause. Thus, it seeks to seal not only judicial documents submitted as part of an adjudication, but court proceedings and the adjudication itself. If the common law right of access attaches to judicial documents, it can only attach more strongly to actual court proceedings and decisions.

### B.     The weight of the presumption of access

"[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts," *Lugosch* at 119. The Stipulation is at the center of this matter. Simply put, this Court's actions in this case would be impossible to parse or evaluate absent knowledge of the Stipulation and its contents. Thus, on "a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to ensure their irrelevance," the Stipulation falls on the end of the spectrum for those matters that directly affect the Court's adjudication. *Id.* Accordingly, the common law presumption of access strongly attaches. *See Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 338 (S.D.N.Y. 2012) (collecting cases that explain that "any document reflecting the terms of the settlement and submitted to the Court is a 'judicial document' to which the presumption of access likely applies" and that where said document "goes to the heart of the matter being adjudicated," then the presumption of access to it is "at its strongest.") (internal quotations omitted).

### C.     Countervailing factors

Respondents' request for these redactions focuses not on the first two factors of *Lugosch*, but only on the third, which requires the court to balance countervailing factors to the presumption of access. In other words, it seems that Respondents do not dispute that the

documents at issue are judicial documents to which a strong presumption of access attaches but nonetheless argues that countervailing factors militate in favor of concealment.

Respondents give three main justifications for its sealing request. First, Respondents argue that they made "certain admissions and concessions" in the document that cannot form a basis for liability; second, they contend that these concessions could harm Respondents' market position because competitors may use information in the Stipulation to Respondents' detriment; and third, they emphasize that the Stipulation was entered into with the understanding that its terms and contents would remain confidential.

These arguments fail to overcome the presumption of access. The first argument — that the Stipulation cannot be evidence of liability — misplaces the emphasis in this inquiry. The Stipulation has not been offered as evidence of liability as to any claim, but as a contract between the parties in this dispute about the Stipulation's effect on other ongoing proceedings. Were this case a dispute on the question of whether Respondents had violated California law (*see* ECF No. 89), then perhaps this argument would be more persuasive. But that question is not part of this Court's purview. Respondents' reliance on Fed. R. Evid. 408(a) in support of this argument is likewise inapposite. Rule 408(a) deals with *admissibility*, not public access.

Respondents' second argument is the crux of its argument. Respondents argue that unnamed, hypothetical third parties may learn information from the Stipulation and use it to Respondents' economic detriment. The Stipulation, however, is merely a two-page, double-spaced document that voids portions of the contract between Petitioner and Respondents. It admits nothing about Respondents' other contracts, nor does it contain trade secrets or other proprietary information. It does not take an explicit position on the merits of the underlying suit that it settled — an administrative action to void portions of the original contract between

5

Petitioner and Respondents for failure to submit that contract to the California Insurance Commissioner, as required by law. The only foreseeable harm to Respondents would be that, if Respondents *also* failed to submit their *other* contracts as required to the California Insurance Commissioner, perhaps other parties with whom Respondents have contracted may realize the error and likewise seek to void portions of their contracts by claiming they are unlawful. This is obviously a result Respondents would like to avoid. But it is not grounds to seal. "The fear of copycat lawsuits or embarrassing inquiries [does not] suffice to defeat the presumption" of public access to judicial documents. *Wolinsky*, 900 F. Supp. 2d at 338–39 (noting additionally that the fear that disclosure will prompt additional litigation is "speculative" and "insufficient to justify sealing") (internal quotations omitted). Nor would this be the sort of information that courts typically find worthy of protection. Protecting from public view a company's failure to abide by state law runs directly contrary to the public interest. "Foreclosing public scrutiny of the grounds for [an] adjudication" because public scrutiny might reveal embarrassing or even illegal corporate conduct "is wholly unjustifiable." *Joy*, 692 F.2d 880 at 894.

      Finally, Respondents argue that allowing public access to the Stipulation and its contents will deprive them of the benefit of their bargain with Petitioner and violate the terms of the Stipulation. Implicit in this argument is an argument that ignoring the bargained-for confidentiality clause might chill the settlement process itself. This argument alone has merit. Per *Lugosch*, an interest in "judicial efficiency" may overcome the public right of access. 435 F.2d at 120. Courts have held that "judicial efficiency encompasses the use of settlement to resolve an action," *Lohnn v. Int'l Bus. Machines Corp.,* No. 21 Civ. 6379, 2022 WL 3359737 at *5 (S.D.N.Y. Aug. 15, 2022), and have noted that "honoring the parties' express wish for

confidentiality may facilitate settlement, which courts are bound to encourage." *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 143 (2d Cir. 2004).

Unlike in *Lohn* and *Gambale*, however, the Stipulation here has been submitted to the Court — by both sides — and goes to the heart of the matter being adjudicated. Indeed, in *Gambale* the Second Circuit explicitly distinguished cases where the settlement at issue had been filed with the court, was the subject of an adjudication, and thus had become a presumptively public judicial document. 377 F.3d at 143. Nor is this interest sufficient to overcome the presumption of access in this case. Courts have overwhelmingly held that the mere fact that a settlement agreement contains a confidentiality provision is an insufficient interest to overcome the presumption of access to judicial records, for "the presumption of public access would become virtually meaningless if it could be overcome by the mutual interest of the parties in keeping their settlement private." *Wolinsky*, 900 F. Supp. 2d at 338 (collecting cases). The right belongs to the public, not to the parties, and therefore the parties alone cannot waive it.

Finally, Respondents contend that all references to the Stipulation and its contents should be redacted as a "less restrictive alternative" to sealing. (ECF No. 91 at 2.) The redactions sought, however, would just as effectively conceal the reasoning and merit of this Court's actions in this case by obscuring the key document and legal analysis. The redactions would therefore be nearly as effective as sealing at frustrating the intended purpose of the common law right of access, which "is based on the need for federal courts, though independent — indeed, particularly because they are independent — to have a measure of accountability and for the public to have confidence in the administration of justice." *Lugosch*, 435 F.3d at 119 (quoting *Amodeo*, 71 F. 3d at 1048). As the Second Circuit has recognized, "without monitoring . . . the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial

7

proceedings," and "[s]uch monitoring is not possible without access to the testimony and documents that are used in the performance of Article III functions." *Id.* This reasoning logically applies nearly as strongly to redactions restricting access to the issues at the center of a dispute as it does to sealing. Accordingly, in this case, the analysis for redacting and sealing lead to the same result: Respondents have not articulated a sufficient basis for the Court to order the sealing or redactions that it requests.

Finally, courts typically consider sealing requests pursuant to both the common law right of access and the rights the First Amendment provides to the press and public to access Court proceedings, and where First Amendment considerations are at play, the bar for courts to approve sealing is even higher. Here, having concluded that the common law right of access attaches and is not outweighed by countervailing factors, the Court need not consider whether Respondents have met the even higher standard of the First Amendment.

## I.     Conclusion

Respondents' sealing requests are DENIED. The Clerk of Court is directed to close the motions at ECF Nos. 53, 91, and 99 and to publish the transcript of the proceedings in this matter without Respondent's proposed redactions.

SO ORDERED.

Dated: June 30, 2023
       New York, New York

_____
J. PAUL OETKEN
United States District Judge